ARCHITECT FEE SCHEDULE Architects may not agree among themselves to fix or set minimum fees for architectural services rendered to the State of Oklahoma, nor may they agree among themselves to insist upon being paid for a feasibility study before negotiating for a fee for services rendered to the State of Oklahoma. In addition, they may not agree among themselves to set out specific duties or responsibilities for a set fee. Likewise, they may not attempt to achieve the above purposes or goals by means of a code of ethics, rules or regulations or similar enactment adopted by the Oklahoma Council of Architects, American Institute of Architects, or similar type organization, since such enactment would not supersede state or federal legislation. Any such agreement or arrangement mentioned above is in violation of state and federal legislation, specifically, 79 O.S. 1 [79-1] (1971) and 15 U.S.C.A. 1 et seq. Any person adjudicated to have violated the above legislation is subject to liability in an action for damages and in an action for injunctive relief. The Attorney General has received your letter wherein you ask eight questions: "1. May the American Institute of Architects set a minimum amount at which negotiations for fees for architectural services must begin, in Oklahoma? "2. May the Oklahoma Council of Architects set a minimum amount at which negotiations for fees for architectural services must begin in Oklahoma? Can the architects of Oklahoma legally conspire to fix a minimum fee schedule for their architectural services? "4. Is the setting of a minimum amount from which for fee negotiations for architectural services contracted by the State of Oklahoma must begin, a violation of the Sherman-Anti-Trust Act or Oklahoma price fixing and conspiracy laws? "5. Can the architects of Oklahoma legally conspire to fix their duties and responsibilities under contracts with various state agencies? "6. Would a cause of action for either damages or an injunction lie against the American Institute of Architects and Oklahoma Council of Architects for price fixing in restraint of trade? "7. Can the Oklahoma Council of Architects conspire and hide behind a Code of Ethics by insisting upon being paid for a feasibility study before negotiating for a percentage fee? "8. Can a professional society, by adopting a Code of Ethics, supersede the public policies of the state as enunciated by legislation or regulations adopted by a department of state government?" Before answering these questions, it is necessary to refer to the Federal and State statutes involved. Title 15 U.S.C.A. 1, states in part: "Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: . . . " Title 79 O.S. 1 [79-1] (1971) states: "Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal." The fixing of prices has been held to be in violation of the Federal act. See U.S. v. Socony Vacuum Oil Co., 310 U.S. 150 (1940). For many years, a distinction was made between fixing prices on products sold, and the fixing of fees for professional services that were rendered through a code of ethics or otherwise. However, the recent trend of cases concerning the fixing of fees by professional groups is that such fixing of fees is in violation of laws as those mentioned above relating to restraint of trade. A very recent case is Goldfarb v. Virginia State Bar, 355 F. Supp. 491 (1973). In that case, the United States District Court for the Eastern District of Virginia held that minimum fee schedules are a form of price fixing and therefore inconsistent with anti-trust statutes prohibiting anti-competitive activities. The Court went on to say that minimum fee schedules adopted by a county bar association, consistent violations of which would subject an attorney to disciplinary measures, amounts to a price fixing agreement for purposes of anti-trust statutes. In the case of U.S. v. National Association of Real Estate Boards, et al., 339 U.S. 485 (1950), the United States Supreme Court held that the adoption by an association of real estate brokers in Washington, D.C., of standard rates of fees was held to be a conspiracy in restraint of trade in violation of the Federal Anti-trust Act, even though no penalties were imposed by the Association for deviations therefrom. In the case of U.S. v. Utah Pharmaceutical Association,201 F. Supp. 29 (D. Utah, 1962), affirmed 371 U.S. 24 (1962), it was held that the pharmaceutical association was engaged in conspiracy to fix prices and unreasonable restraint of interstate commerce where its officers and directors distribute price schedules for prescription drugs and induced members to use schedules with the intent of establishing uniform price for prescription drugs within the State. The United States Justice Department has recently taken action against the National Society of Professional Engineers, American Institute of Certified Architects and American Society of Civil Engineers. These cases involved the setting of minimum fees for particular work done. These cases are not reported for the reason that consent decrees were entered. These cases attacked the policy, as set forth in the Code of Ethics of these organizations, that prevented its members from submitting competitive bids. Any attempt to divide markets have also been held illegal, including an attempt to allocate product lines. See Hartford Empire Company v. U.S.,323 U.S. 386 (1965). Thus, any agreement among members of a profession setting out the type of work to be done for a set fee would violate the above statutes. The trend of the cases is against the setting of minimum fees, or any type of arrangement wherein the service or product is restricted or limited, and any attempt to agree to set fees or the amount or type of work to be done for a set fee would be in violation of the above statutes. It is, therefore, the opinion of the Attorney General that all your questions be answered as follows: Architects may not agree among themselves to fix or set minimum fees for architectural services rendered to the State of Oklahoma, nor may they agree among themselves to insist upon being paid for a feasibility study before negotiating for a fee for services rendered to the State of Oklahoma. In addition, they may not agree among themselves to set out specific duties or responsibilities for a set fee. Likewise, they may not attempt to achieve the above purposes or goals by means of a code of ethics, rules or regulations or similar enactment adopted by the Oklahoma Council of Architects, American Institute of Architects, or similar type organization, since such enactment would be subject to state or federal legislation. Any such agreement or arrangement mentioned above is in violation of state and federal legislation, specifically, 79 O.S. 1 [79-1] and 15 U.S.C.A. 1 et seq. Any person adjudicated to have violated the above legislation is subject to liability in an action for damages and in an action for injunctive relief. (Todd Markum) (Price Fixing) ** SEE: OPINION NO. 76-180 (1976) **